Argued June 3; affirmed July 7; rehearing denied September 29, 1937

STATE *v.* WEITZEL ET AL.

(69 P. (2d) 958)

*Henry S. Westbrook*, of Portland, for appellants.

*Thomas B. Handley*, Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for respondent.

BELT, J. A grand jury jointly indicted Ben Melchor, Conrad Troudt, George Weitzel and John Sauer of the crime of having, on August 4, 1935, attempted to rape a young lady 19 years of age who, for the purposes of the record, will be known as Miss X. On the same day the grand jury also jointly indicted the above named defendants with the crime of sodomy in that they "compelled the said 'Miss X' to sustain osculatory relations with the private parts of the said defendants, and each of them". The crime of sodomy was alleged to have been committed at the same time and place as that of the crime of attempted rape. Ben Melchor was tried and convicted of the assault with intent to commit rape. He is now in the penitentiary serving a term of 15 years imprisonment. Conrad Troudt entered a plea of guilty to such charge and was sentenced to serve 12 years in the penitentiary. The defendants George Weitzel and John Sauer were tried on the attempted rape charge but were found not guilty. Following such acquittal the defendants Weitzel and Sauer were tried and convicted of the sodomy charge and each was sentenced to serve 12 years in the penitentiary. From the judgments of conviction the defendants appeal.

A brief statement of the facts is in order. On the evening of August 4, 1935, four young men—George Weitzel, Ben Melchor, Conrad Troudt and John Sauer —were driving around, pleasure bent, on the west side of the city of Portland. Miss X was seen loitering about the streets window shopping. Ben Melchor pointed to the girl and said, "Let's make her," whereupon Weitzel stopped the car. Melchor got out and went over to talk to this poor "boy-struck" girl. She was easily persuaded to get into the car with these four boys who took her to a "beer joint". There she was induced to

drink nearly three glasses of beer, notwithstanding the fact that she had already taken two or three sups of wine en route to the place. If her testimony is to be believed, she had never before drunk intoxicating liquors and it is reasonable to assume that when she left she was in an intoxicated condition, as were the other members of the party.

After leaving the "beer joint" on the east side of the city, at about 11 o'clock in the evening, Weitzel drove his car to an isolated and wooded spot near St. Johns for purpose, as stated by some of the boys, of having sexual relations with this girl. While going to the scene of the alleged crime, Melchor, who was riding with the girl in the back seat, threatened physical violence to her if she did not comply with his desire. He tore off most of her clothing and otherwise shamefully and brutally mistreated her.

When the car was stopped, Weitzel, Sauer and Troudt left the girl alone with Melchor in the back seat of the car and it was understood that they were not to return until a prearranged signal by Melchor had been given. While the three boys were away about a hundred feet distant, they heard the screams of the girl and came back towards the car. She was endeavoring to run away but Melchor caught her and threw her to the ground where, after choking her, he endeavored to have sexual intercourse. While two of the boys held her arms and legs, each took his turn in attempting sexual intercourse with the girl who, it seems, had successfully resisted them.

It was then determined to compel this girl to commit the act of sodomy by the method of osculation. The record discloses that each of the defendants, with the exception of Troudt, committed the detestable crime

against nature which is so shocking to decent-thinking people.

When, at about 1 o'clock in the morning, the girl was brought to the home where she was working as housemaid, she could hardly talk above a whisper. Her clothes were torn and her body was bleeding and bruised as a result of this fiendish and outrageous assault. There are many other revolting details connected with the crime but it is believed the above statement is sufficient to comprehend the assignment of error presented by appellants.

■ The denial of defendants' motion for a directed verdict of acquittal presents the question as to whether there is any substantial evidence to support the verdict. The testimony of the girl plainly tends to show that the defendants Weitzel and Sauer committed the crime charged in the indictment. Troudt, a co-defendant, against whom the indictment had been dismissed at time of trial, testified on behalf of the State that he saw Weitzel and Sauer commit the act of sodomy as alleged. He also testified that he saw Weitzel and Sauer hold the girl while others were attempting to ravish her. The defendant Weitzel, after his arrest and while in jail, made what purports to be a confession of an attempt to rape this girl at the time and place in question. It is true that Weitzel made no reference in such signed statement to the commission of sodomy by himself. Sauer, while in jail, made what purports to be a confession that he is guilty of the crime charged in the indictment. Mrs. Ernest C. Williams testified to the terrible condition of the girl when she returned to her home at about 1 o'clock in the morning. There are many other facts and circumstances showing beyond question that the guilt of the defendants was a matter for the

determination of the jury. No error was committed in denying the motion for a directed verdict.

It is urged that there is no crime of "compelled sodomy". It is agreed that compulsion or force is not an element of the crime of sodomy as defined by the statute (§ 14-734, Oregon Code 1930). The allegation of force as set forth in the indictment might well have been omitted, but it may be rejected as surplusage. Certainly the rights of the defendants were not prejudiced by the allegation that they "compelled the said 'Miss X' to sustain osculatory relations" with them. The court required the State to show, in accordance with such allegations, that the girl was compelled to commit the act charged in the indictment. If any error was thus committed, it was in favor of the defendants. The indictment charged facts sufficient to constitute the crime of sodomy.

Appellants rely upon a plea of former jeopardy by reason of the fact that they were acquitted of the charge of attempted rape. Sodomy and attempted rape are separate and distinct crimes. Neither crime is an element of the other. Evidence sufficient to establish guilt of sodomy would not necessarily show guilt of attempted rape and vice versa. The test of former jeopardy is, as stated in the early and well-considered case of *State v. Stewart*, 11 Or. 52 (4 P. 128), quoting from *Morey v. Commonwealth*, 108 Mass. 434, "* * * not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal, or conviction, under either statute, does not exempt the defendant from prosecution and punishment under the other." In the instant case the State was entitled to

show all the facts and circumstances, notwithstanding it disclosed the commission of two crimes. Defendants have not been put twice in jeopardy for the same offense: *State v. Nodine*, 121 Or. 567 (256 P. 387); *State v. Newlin*, 92 Or. 597 (182 P. 135); *State v. Magone*, 33 Or. 570 (56 P. 648); *State v. Howe*, 27 Or. 138 (44 P. 672); 8 R. C. L. 143; 16 C. J. 263.

■ Error is predicated upon the refusal of the court to require the State to elect whether or not it would prosecute the case on the theory that the defendants were guilty as principals or as aiders and abettors in the commission of the crime charged. The indictment charged but one offense. There was no occasion to make an election. Even though the defendants may have aided and abetted each other, they were, in accordance with the plain mandate of the statute, to be "indicted, tried, and punished as principals": (§ 13-724, Oregon Code 1930). Furthermore, it was stated by counsel for the State that the defendants were being tried on the theory that they were principals. A case in point and adverse to the contention of appellants, is *State v. Mac-Laren*, 115 Or. 505 (237 P. 969).

■ Mrs. Ernest C. Williams, in testifying as to the condition of the prosecutrix, in answer to the question, "Now, what about her face?" stated: "Well, she couldn't hardly talk. Her throat was swollen and she couldn't even get any water down her neck; it was all bruised inside. Blood and stuff all over it, and *that white stuff from the man's privates*." Appellants assert error because the court failed to strike that part of the answer above italicized, on the ground that it was a conclusion of the witness. It is believed that such answer pertained to a matter of common knowledge and that the witness was entitled to so testify even if it did involve a conclusion not that of an expert: Underhill on

Criminal Evidence, § 372. The same question arose in the case of *People v. Swist*, 136 Cal. 520 (69 P. 223), and the court held such evidence admissible. Also to the same effect see *State v. Morasco*, 42 Utah 5 (128 P. 571).

Exhibits 14 and 15, purporting to be written statements of George Weitzel, were received in evidence over the objection of the defendants. On behalf of the defendant Weitzel, the following objections in brief were made: That:

(1) "It is not shown by any facts or circumstances to have been freely and voluntarily made and without threats and promises of the officers."

(2) Facts related therein pertain to charge of attempted rape and hence are not admissible in instant action;

(3) Facts related therein do not pertain to the specific charge of sodomy. On behalf of defendant Sauer, the following objections in brief were made: That:

(1) Statements of George Weitzel are not binding on him and constitute hearsay evidence;

(2) Matter relating to venereal disease is prejudicial and does not tend to prove any issue in the case;

(3) Matters relating to what Troudt and Melchor did is not material or relevant and is highly prejudicial.

Exhibit 14 contained a detailed statement made by Weitzel concerning the facts and circumstances of the attempted rape, but made no reference to the alleged act of sodomy. Exhibit 15 was a supplementary statement made by Weitzel on the same day, while in jail, wherein he stated that, after he attempted sexual intercourse with the girl, Sauer "took his penis and placed it in her mouth" and that "Troudt and Melchor were holding the girl during this performance".

It is apparent from the record that there was a failure to recognize the distinction between admissions

and confessions. The requested instruction submitted by the State relative to admissions of the defendant Weitzel as distinguished from a confession, was proper.

These two exhibits were not confessions of guilt of the crime of sodomy. They were admissible, however, as admissions against the party making them. The motion to strike, therefore, was not well taken. Counsel should have requested the court to admit the evidence with certain limitations. The court, however, did later instruct the jury that the purported confessions could be considered only against the party making them and not against the co-defendant.

■ There was evidence of a conspiracy to commit a wrongful act. It is plain that these boys intended to "gang up" on this girl. It may be that when they took her out to this secluded spot they did not contemplate committing the act of sodomy, but that is immaterial: *State v. Goodloe*, 144 Or. 193 (24 P. (2d) 28). It is sufficient that they had the common design of committing an unlawful act. If A and B enter into a conspiracy to rob a bank and, in furtherance of that common design, the cashier was shot and killed, can it reasonably be contended that both are not guilty of murder, although they originally contemplated only robbery?

■ The acts or declarations of a conspirator, made in furtherance of a common design, are admissible against his co-conspirators: *State v. Caseday*, 58 Or. 429 (115 P. 287); *State v. Ryan*, 47 Or. 338 (82 P. 703), 1 L. R. A. (N. S.) 862). Hence the evidence relative to a conversation between the girl and Melchor at the scene of the crime but not in the hearing of the appellants was admissible. It does not follow, however, that after the consummation of the unlawful act, the acts or declarations made by one conspirator are admissible against his co-conspirator. Such

acts or declarations are then received in evidence only as against the party making them. It is true that no conspiracy was charged in the indictment, but it is not necessary for the State to make such charge: *State v. Johnston*, 143 Or. 395 (22 P. (2d) 879). It is believed that whatever error, if any, committed by the court in reference to its failure to distinguish between admissions and confessions was invited by the appellants in their requested instructions on the subject of confessions. It will not do for counsel to invite error and then complain about it. Furthermore, the instruction which the court gave relative to confessions was applicable as against Sauer, as there was received in evidence a writing by him purporting on its face to be a confession of having committed the crime of sodomy.

 Appellants complain of the admission in evidence of the facts and circumstances surrounding the attempted rape. It is asserted that such evidence has no relevancy to the charge of sodomy. The law is well settled that, when several criminal acts are so connected with the defendant, with respect to time and locality, that they form an inseparable transaction, and a complete account of the offense charged in the indictment cannot be given without detailing the particulars of such other acts, evidence of the entire transaction is admissible, even though it may disclose the commission of another crime: *State v. Bailey*, 90 Or. 627 (178 P. 201); *State v. Gillis*, 154 Or. 232 (59 P. (2d) 679).

██ Assignments of error predicated upon view of the premises; receiving in evidence of photograph of prosecutrix showing her condition on the morning after the assault; permitting leading questions to prosecutrix; and allowing prosecutrix to repeat certain parts of her testimony are, in our opinion, without merit and will be passed without comment.

Neither do we think there is any merit in the claim of misconduct on the part of counsel, the court, or the jury. The record has been carefully studied in that respect. While there was much unnecessary bickering in this extended trial—in which counsel for appellants participated—we find no ground for reversible error.

█ The trial court was right in denying motion for new trial for the reason that some juror found in the jury room a newspaper clipping concerning the general demeanor of some lawyers in criminal trials and the inclination of some persons charged with crime to repudiate a confession. It is unfortunate that things of such nature occasionally occur in the trial of criminal cases, even though much caution and care is exercised. However, we think the jury was not influenced in reaching its verdict in the instant case by reason of the newspaper clipping.

The instructions of the court were clear and it is believed that the defendants had a fair and impartial trial.

The judgments of conviction are affirmed.