Argued and submitted December 12, 1979,
affirmed February 19, 1980

STATE OF OREGON,
*Respondent,*
*v.*
ROBERT MICHAEL BUNYEA,
*Appellant.*

(No. C 78-09-14411, CA 13891)

606 P2d 685

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, and Steve Dixon, Certified Law Student, Salem.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

Convicted of rape in the first degree[1] after trial by jury, defendant on appeal assigns as error: (1) failure to give his requested jury instructions on mistake of fact[2] and the statutory definition of "knowingly,"[3] and (2) the court's instruction to the jury on aiding and abetting.[4]

Defendant and a friend named Phillips escorted the victim by car to defendant's apartment. Upon arrival, the victim said she wanted to walk home, but defendant restrained her and told her he would not let her walk. She then entered the apartment to use the toilet. When she emerged from the bathroom, defendant, who was standing near the door, pulled her down on a bed and told her in coarse terms[5] that she was going to

[1] ORS 163.375 provides:

"(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male; or

"(b) The female is under 12 years of age; or

"(c) The female is under 16 years of age and is the male's sister, of the whole or half blood, his daughter or his wife's daughter.

"(2) Rape in the first degree is a Class A felony."

[2] Defendant's requested instruction:

"If you find that the defendant was honestly mistaken as to a particular fact or circumstance, you are to evaluate the evidence as though the facts were as the defendant believed them to be. You are not to consider whether or not you feel the defendant's mistake was reasonable under the circumstances; but only whether or not he was in fact genuinely mistaken."

[3] Defendant's requested instruction:

"A person acts knowingly if he acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists. ORS 161.085."

[4] "*** Where two or more persons are jointly involved with the commission of a crime it is not necessary that it be shown that all of the defendants or either one of them, when tried alone, actually performed all of the acts making up the elements of the crime. It is sufficient if it be shown that the joint defendants were acting together for that purpose, and then, if either one of them, while so acting together for a common purpose, actually committed the acts complained of, then all of the said persons would be guilty of the crime ***."

[5] *See State v. Evans*, 43 Or App 95, 98, 602 P2d 317 (1979).

engage in sexual activity with him. The victim yelled for Phillips, who entered the room and told defendant to leave, which he did. Phillips then told the victim that defendant would kill her if she did not do what defendant wanted her to do and that he, Phillips, would let that happen unless she made love with him (Phillips). The account given by Phillips, who testified at the trial for the state, was that the victim indicated she was willing to have sexual relations with him but not with defendant, and that he told her he would leave her to argue with defendant.

At this point, according to the victim, she began crying and screaming. Defendant came in, slapped her and said that if she screamed again he would "put her out" for good. She told them she had the right to decide who she went to bed with, but they told her they did not care about her rights. Phillips told defendant to "stay mellow" and again asked him to leave, which he did, closing the door to the bedroom. Phillips repeated his earlier statement to her about defendant, and then the victim and Phillips had sexual relations. As that was concluding, defendant, naked, appeared by the bed and proceeded to have sexual intercourse with the victim. There was evidence from the victim, defendant and Phillips that she objected to this in various ways, both physical and verbal, but did not try to escape. She testified she was frightened of defendant. His defense at trial was that the victim never specifically told him to stop and that he mistakenly thought she was consenting. Defendant was indicted[6] and tried on a charge

---

[6] The indictment read:

"The above-named defendant is accused by the Grand Jury of Multnomah County, State of Oregon, by this indictment of the crime of RAPE IN THE FIRST DEGREE committed as follows:

"The said defendant, on or about August 3, 1978, in the County of Multnomah, State of Oregon, did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with Kellie Harden, a female, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated September 14, 1978, at the City of Portland, in the County aforesaid."

of rape in the first degree; Phillips was indicted and tried separately.

As to the first assigned error, the defendant was not entitled specifically to his particular requested instructions, but only to have his theory of the case presented to the jury if there was evidence to support it. *State v. Ollison* 16 Or App 544, 548, 519 P2d 393 (1974). The essence of the mistake of fact instruction, *supra* n 2, in this context is that it would allow the jury to find that intent was lacking. The trial court did instruct the jury that the state had the burden to prove beyond a reasonable doubt each allegation of the indictment, including the intent elements in the use of forcible compulsion.

Defendant argues further that the statutory definition of "knowingly" should have been given to the jury upon defendant's request. The trial court instructed the jury that "[t]erms not specifically defined in these instructions are to be given their general known and understood meanings." Although defendant argues that "knowingly" may signify a range of intents in different contexts, we think that in this context the meaning is fairly obvious: to denote that the defendant was aware that he was using force to compel the victim to submit to him. The instructions given[7] were sufficient to present defendant's theory of the case to the jury, and the content of those instructions was within the broad discretion of the trial court in charging the jury. ORS 17.255(1); *State v. Jones*, 11 Or App 129, 134-35, 500 P2d 1225 (1972), *rev den* (1973).

---

[7] The trial judge also instructed the jury as follows:

"*** In considering the knowledge, purpose or intent which a person possesses, or with which a person does an act, this is a matter which is rarely capable of exact proof. In determining such an issue it is entirely proper and usually necessary for you to reach your conclusion by indirect or circumstantial evidence. In such a case you must consider all of the circumstances surrounding the particular act or transaction, all evidence bearing upon that point; use your own good common sense and powers of deduction upon all of these facts and then, from all of those things, arrive at your ultimate decision regarding the knowledge, purpose or intent with which an act was committed. ***"

That the indictment only accuses a defendant of perpetrating a criminal act does not prevent his being found guilty as an aider and abettor.[8] *State v. LeBrun,* 37 Or App 411, 416, 587 P2d 1044 (1978), *rev den* 286 Or 149 (1979). Defendant's sole contention is that there was no evidence of cooperation between defendant and Phillips.[9] In addition to the facts related above, which were themselves sufficient, Phillips testified that upon arrival at defendant's apartment, defendant suggested to him that they rape the victim. As we stated in *State v. Stark,* 7 Or App 145, 152, 490 P2d 511 (1971), " '[T]he least degree of concert or collusion between the parties to an illegal transaction makes the act of one of them the act of all.' " It was not error to give the instruction on aiding and abetting.

Affirmed.

---

[8] In aid of clarification we note a possible issue which is *not* raised by this appeal. Defendant was indicted as a principal in one incident of forcibly compelled sexual intercourse. Phillips was not named in that indictment nor was any separate act by Phillips described in defendant's indictment. The two individuals were tried separately. At defendant's trial there was evidence of defendant's having played roles in both episodes sufficient to permit a jury to conclude that defendant himself raped the victim and that he aided and abetted Phillips in the latter's raping her. The jury was instructed accordingly. Neither the jury's general verdict nor the poll of the jury would permit a conclusion whether defendant was convicted as a principal for his own act of rape or as an aider and abettor. It is unclear whether 10 of the jurors all agreed on either of the theories. None of the assignments of error go to the issues the described situation might raise. *See State v. MacLaren et al,* 115 Or 505, 508, 237 P 969 (1925); *State v. Weitzel,* 157 Or 334, 341, 64 P2d 958 (1937).

[9] Defendant does not contend that there was insufficient evidence to show that the conduct of the other person constituted a crime, one requirement for a defendant to be convicted of aiding and abetting. ORS 161.155(2)(b). *See* n 8, *supra.*